UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE MUNIZ, | |
| Plaintiff, | No. 24 C 5948 |
| v. | Judge Thomas M. Durkin |
| CITY OF CHICAGO et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Christine Muniz brings this action against the City of Chicago, Chicago Police Detectives Charles Hernandez and John Hendry, and unknown officers (collectively, "City Defendants") and Cook County, the Cook County Medical Examiner's Office ("MEO"), and Dr. Latanja M. Watkins (collectively, "County Defendants") in connection with their alleged failure to properly identify the body of Muniz's deceased son, David Carroll, and return his phone. City Defendants and County Defendants move to dismiss.[1] *See* R. 18, 30, 36. For the following reasons, City Defendants' motion is granted, and County Defendants' motions are continued.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short

---

[1] The MEO initially moved for dismissal. R. 18. Dr. Watkins and Cook County then filed a motion joining the MEO's motion to dismiss and making additional arguments for dismissal. R. 30. Muniz filed a single response to both motions, R. 34, and County Defendants filed a single reply, R. 42.

1

and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

## Background

I. Carroll's Death and Identification

Carroll left in-patient rehabilitation on July 21, 2021. R. 1 ¶ 14. Not having heard from Carroll since his release, Muniz became worried and on July 25, 2021, began calling hospitals and the MEO in an effort to find him. *Id.* ¶¶ 15, 17. Unbeknownst to Muniz, on August 2, 2021, Carroll was found dead from an

accidental overdose in another person's apartment. *Id.* ¶¶ 4, 30, 70. Chicago Police[2] photographed him and the numerous forms of identification found on him, and the MEO took possession of his body and performed an autopsy. *Id.* ¶¶ 31–33, 47, 90–92. Despite his forms of identification and photographs showing he was white, the autopsy report listed him as an unknown Black male. *Id.* ¶¶ 32, 48, 93. Around August 8, 2021, Chicago Police notified the MEO that they believed the body to be Carroll's based on a tattoo match, but the MEO did not update their identification. *Id.* ¶ 94. Dr. Watkins completed a report for an August 3, 2021 postmortem examination, which lists the deceased as a "black male" and was signed on November 1, 2021. *Id.* ¶¶ 118–21.

Meanwhile, Muniz had continued to search for her son. On September 6, 2021, Muniz gained access to Carroll's apartment, where she smelled bleach and observed a muddy sheet with a woman's earring on his bed and food left out as if someone stopped in the middle of cooking. *Id.* ¶¶ 21–23. Believing this to be a crime scene, Muniz immediately called Chicago Police, sharing her observations and asking them to come look at the apartment. *Id.* ¶¶ 21, 23, 24. Chicago Police refused. *Id.* ¶ 25. Muniz spoke with Defendant Detective Charles Hernandez who told Muniz that Carroll was an "alcoholic" so his disappearance was not a priority. *Id.* ¶ 27. When Muniz explained that Carroll had been doing better, Hernandez stated that there

---

[2] Unless otherwise specified, any reference to "Chicago Police" refers to unknown officers. Where Muniz names particular officers in her complaint in connection with certain conduct, the Court names those individuals when describing that conduct in this section.

were "more important cases than an alcoholic that is probably in the gutter somewhere." *Id.* ¶¶ 28, 29.

A week later, she again asked Chicago Police to come look at the apartment, and again they refused. *Id.* ¶ 34. Convinced a crime had taken place, Muniz called the MEO at least ten times, asking about unidentified bodies that fit Carroll's description and describing her emotional distress. *Id.* ¶¶ 35, 36, 128. Each time, she was told they did not have her son's body. *Id.* ¶ 36. Continuing her own investigation, Muniz examined Carroll's cell phone records and observed suspicious unknown numbers and calls and texts that stopped around July 27, 2021. *Id.* ¶ 39. Muniz reached out to Chicago Police again to report these findings, but they refused to take her claims seriously. *Id.* ¶¶ 38, 40.

On September 22, 2021, Muniz again called Chicago Police, who reported that officers were being sent to her home. *Id.* ¶ 42. Before the officers arrived, she called the MEO to ask if they had discovered Carroll's body. *Id.* ¶ 44. They initially said no, but when Muniz mentioned that officers were on their way to her home, the MEO informed her that Carroll's body had been in their possession since August 2, 2021. *Id.* ¶¶ 44, 45.

II. Carroll's Phone

After the discovery of Carroll's body, Muniz learned that Chicago Police had possession of his phone. *Id.* ¶ 63. At some point in time not specified in her complaint, an unknown police officer told her that she could retrieve the phone, but when she arrived at the station, Hernandez refused to give it to her, belittled her, and placed

4

his hand on his gun so as to threaten her. *Id.* ¶¶ 65, 66. After being told by another unknown officer that Defendant Detective John Hendry had to release the phone to her, Muniz spoke to Hendry, who said he needed a phone bill or another document to identify the phone. *Id.* ¶¶ 67, 68. When Muniz returned with the documentation, Hendry told her the phone was at "ERPS,"[3] and could not be returned because it was evidence. *Id.* ¶¶ 69, 70.

Sometime in 2023, Hernandez and Henry told Muniz she could retrieve the phone, but when she went to the station as directed, she was told she could not have it because it was either in a different location or she needed certain paperwork. *Id.* ¶ 73. In March 2024, Sergeant Guzman—who was heading an internal investigation related to this matter—told Muniz exactly how she could retrieve the phone from ERPS. *Id.* ¶¶ 75, 76. After visiting ERPS, learning she did not have the proper form, obtaining the form, and returning with it in April 2024, Muniz was told by an unknown officer that "the phone is not here and never was." *Id.* ¶¶ 76–80, 85–88.

III. State Court Suit

On September 20, 2022, Muniz filed a suit in state court against the County Defendants, City Defendants, and a nonparty for negligence and reckless infliction of emotional distress. *See Muniz v. City of Chicago et al.*, Case No. 2022L008491 (Cook County Cir. Ct.). On January 31, 2024, the court dismissed all claims against the City Defendants with prejudice and set a hearing to address the status of service on the

---

[3] ERPS refers to the Evidence and Recovered Property Section.

5

County Defendants. R. 19-5. The next month, Muniz dismissed her action against the County Defendants without prejudice. R. 19-6.

    IV.    Federal Suit

Muniz filed the instant suit on July 15, 2024. *See* R. 1. She asserts a § 1983 claim against Hendry, Hernandez, and unknown officers for refusing to return Carroll's phone in violation of the Fourth and Fourteenth Amendments (Count I); *respondeat superior* against the City (Count II); reckless infliction of emotional distress against the MEO and Dr. Watkins (Count III); and *respondeat superior* against the County (Count IV). City Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), and County Defendants move to dismiss under Rules 12(b)(1), (5), and (6).

## Discussion

    I.    City Defendants' Motion to Dismiss

        a.  § 1983 Claim

City Defendants seek dismissal of the § 1983 claim on a number of grounds. They argue that Muniz lacks "standing" to assert a Fourth Amendment violation because the phone belonged to Carroll, not to her. They contend that Muniz fails to state a § 1983 claim under the Fourth or Fourteenth Amendments on the merits. And they raise personal involvement and qualified immunity arguments.

As to "standing," Fourth Amendment standing "is not a jurisdictional question," but rather a "useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest" in the property seized. *See Byrd v. United States*, 584 U.S. 395, 411 (2018). A Fourth Amendment seizure of property

6

"occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal vs. Cook Cty.*, 506 U.S. 56, 60 (1992). Muniz plausibly alleges that she has a possessory interest in the phone because she alleges that she is Carroll's next of kin and that she had access to the phone records. *See generally* 755 ILCS 5/2-1 (Illinois rules on descent and distribution).[4] So City Defendants' "standing" argument is unavailing.

However, Muniz nonetheless fails to state a § 1983 claim under the Fourth Amendment because the Fourth Amendment "cannot be invoked by the dispossessed owner to regain his property." *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003). In *Lee*, police impounded Lee's car for evidentiary purposes. *Id.* at 460. After police completed their search, the City refused to return the car unless Lee paid certain fees. *Id.* Lee did not challenge the reasonableness of the initial seizure, but instead argued that the City's failure to return his car was a new seizure or turned the otherwise reasonable seizure into an unreasonable one. *Id.* The Seventh Circuit rejected both arguments, explaining that "meaningful interference with a possessory interest" is limited to a person's interest in *retaining* property, not *regaining* it. *Id.* at 466. Thus, the City's refusal to return Lee's car unless he paid "neither continued the initial seizure nor began another." *Id.*

---

[4] City Defendants point out Muniz did not specifically allege that she was Carroll's closest living relative in her complaint. However, the Court may properly consider that additional fact as it is consistent with other allegations in her complaint about her relationship with Carroll and her access to his property following his disappearance. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (New facts stated in brief opposing dismissal may be considered "so long as those facts are consistent with the pleadings.").

Likewise, here, Muniz does not argue that the initial seizure was improper or that the time it took to search the phone was unreasonable. Instead, she claims that withholding the phone after telling her she could retrieve it was a new seizure that violated the Fourth Amendment. But, as *Lee* makes clear, the seizure occurred when Chicago Police recovered the phone with Carroll's body. Contrary to Muniz's assertion, City Defendants' failure to return the phone to Muniz, even after telling her she could retrieve it, does not constitute a new seizure under the Fourth Amendment. As in *Lee*, Muniz fails to state a Fourth Amendment claim.

As to Muniz's Fourteenth Amendment claim, the disposition of seized property is regulated by the Due Process Clause. *Kelley-Lomax v. City of Chicago, Illinois*, 49 F.4th 1124, 1125 (7th Cir. 2022) (citing *Conyers v. Chicago*, 10 F.4th 704, 709–10 (7th Cir. 2021)). But "[s]ubstantive due process is not a blanket protection against unjustifiable interferences with property." *Lee*, 330 F.3d at 467 (citation omitted). Where, as here, a "substantive-due-process claim does not implicate a fundamental right and involves only the deprivation of a property interest," a plaintiff "must show as an initial matter either that state-law remedies are inadequate or that an independent constitutional right has been violated." *Id.* (citation omitted).

Here, Muniz does not plausibly allege that state-law remedies are inadequate. Indeed, she initially brought suit in state court. City Defendants point out, and Muniz does not deny, that she could bring state-law claims for conversion or theft. *Cf. Gable v. City of Chicago,* 296 F.3d 531, 540 (7th Cir. 2002) (plaintiffs had "complete remedy" because they could have brought bailment or replevin actions under Illinois law to

order return of impounded vehicles and recover compensation); *Davenport v. Giliberto*, No. 11 CV 6855, 2013 WL 5432822, at *4 (N.D. Ill. Sept. 30, 2013) (dismissing federal due process claim against police who allegedly took her belongings where Illinois claim of conversion provided adequate post-deprivation remedy). And Muniz does not claim that City Defendants would be immune from those claims under Illinois law. *Cf. Belcher v. Norton*, 497 F.3d 742, 751, 753 (7th Cir. 2007) (state-law remedy was inadequate because deputy had acted within the scope of his employment and was therefore immune from tort liability under Indiana law); *Johnson v. Amann*, No. 09 C 6077, 2011 WL 1357520, at *4 (N.D. Ill. Apr. 11, 2011) (conversion claim was an adequate remedy because Illinois law denies immunity to public employees who engage intentional misconduct). Instead, Muniz says that City Defendants will be able to argue that they lawfully retained the phone. But the existence of that potential defense, which may or may not be successful, does not make the conversion or theft claims unavailable to Muniz. She therefore fails to adequately plead a Fourteenth Amendment violation.

Because Muniz fails to state a § 1983 claim under the Fourth or Fourteenth Amendments, the Court declines to address City Defendants' personal involvement and qualified immunity arguments. Additionally, because Muniz has not sufficiently pled a constitutional violation, her *Monell* claim fails too. *See First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021).

    b. *Respondeat Superior*

The City also seeks dismissal of the *respondeat superior* claim. *Respondeat*

*superior* liability does not apply to § 1983 claims, *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021), and Muniz does not bring any state-law claims against the individual City Defendants. As such, the Court dismisses the *respondeat superior* claim. *See Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1076 (N.D. Ill. 2022). Moreover, by not responding to this argument, Muniz has waived any opposition to dismissal. *See Refined Metals Corp v. NL Indus. Inc.*, 937 F.3d 928, 935 (7th Cir. 2019).

    c. Dismissal with Prejudice

Lastly, City Defendants ask the Court to dismiss the complaint with prejudice and deny leave to amend. Generally, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 519 (7th Cir. 2015). And here, Muniz claims she can cure any deficiencies in her complaint. On that basis, the Court will allow Muniz the opportunity to amend.

    II. County Defendants' Motions to Dismiss

County Defendants seek dismissal of the state-law claims against them on several grounds, including a lack of supplemental jurisdiction. Because the only federal claim in this case is dismissed, albeit without prejudice and with leave to amend, the Court declines to address the viability of state-law claims against County Defendants at this juncture. *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) ("When federal claims drop out of the case," the court "has

broad discretion to decide whether to . . . relinquish supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment.").

## Conclusion

For the foregoing reasons, City Defendants' motion to dismiss is granted, and County Defendants' motions to dismiss are continued. The claims against City Defendants are dismissed without prejudice and with leave to amend. The amended complaint, if filed, is due on April 18, 2025.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: March 19, 2025

11