UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE MUNIZ,

        Plaintiff,

      v.

CITY OF CHICAGO et al.,

        Defendants.

No. 24 C 5948

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Christine Muniz brings this action against the City of Chicago, Chicago Police Detectives Charles Hernandez and John Hendry, and unknown officers ("City Defendants") and Cook County, the Cook County Medical Examiner's Office ("ME's Office"), and Dr. Latanja M. Watkins ("County Defendants") in connection with the alleged misidentification of her deceased son, David Carroll, and failure to return his phone. The City Defendants and the County Defendants separately move to dismiss. R. 67, 68. For the following reasons, those motions are granted.

## Background

I.    Carroll's Death and Identification

Carroll left in-patient rehabilitation on July 21, 2021. R. 66 ¶ 14. Not having heard from Carroll since his release, Muniz became worried and on July 25, 2021, began calling hospitals and the ME's Office in an effort to find him. *Id.* ¶¶ 15, 17. Unbeknownst to Muniz, on August 2, 2021, Carroll was found dead from what Chicago Police deemed an accidental overdose in another person's apartment. *Id.* ¶¶

1

4, 30, 70. Chicago Police photographed him and the numerous forms of identification found on him, and the ME's Office took possession of his body and performed an autopsy. *Id.* ¶¶ 31–33, 46, 83–85. Despite his forms of identification and photographs showing he was white, the autopsy report listed him as an unknown Black male. *Id.* ¶¶ 32, 48, 86, 128, 129. Around August 8, 2021, Chicago Police notified the ME's Office that they believed the body to be Carroll's based on a tattoo match, but the ME's Office did not update their identification. *Id.* ¶ 87. Dr. Watkins completed a report for an August 3, 2021 postmortem examination, which lists the deceased as a "black male" and was signed on November 1, 2021. *Id.* ¶¶ 126–28.

Meanwhile, Muniz had continued to search for her son. She visited Carroll's apartment on September 6, 2021, and believing it to be a crime scene, immediately called and reported her observations to Chicago Police, who refused to come look at the apartment. *Id.* ¶¶ 21–25. Muniz also spoke with Hernandez, who told Muniz that Carroll was an "alcoholic" so his disappearance was not a priority, noting there were "more important cases than an alcoholic that is probably in the gutter somewhere." *Id.* ¶¶ 27, 28, 29, 41. She again asked Chicago Police to come look at the apartment a week later, and again they refused. *Id.* ¶ 34. She also examined Carroll's cell phone records and told Chicago Police about suspicious unknown numbers and calls and texts that stopped around July 27, 2021, but they refused to take her claims seriously. *Id.* ¶¶ 37–40.

Convinced a crime had taken place, Muniz called the ME's Office at least ten times, asking about unidentified bodies that fit Carroll's description and describing

her emotional distress. *Id.* ¶¶ 35, 36, 128. Each time, she was told they did not have her son's body. *Id.* ¶ 36. On September 22, 2021, Muniz again called Chicago Police, who reported that officers were being sent to her home. *Id.* ¶ 42. Before the officers arrived, she called the ME's Office to ask if they had discovered Carroll's body. *Id.* ¶ 44. They initially said no, but when Muniz mentioned that officers were on their way to her home, the ME's Office told her that Carroll's body had been in their possession since August 2, 2021. *Id.* ¶¶ 44, 45.

II.     Carroll's Phone

After the discovery of Carroll's body, Muniz learned that Chicago Police had possession of his phone. *Id.* ¶ 63. At some point, an unknown police officer told her that she could retrieve the phone, but when she arrived at the station, Hernandez refused to give it to her, belittled her, and placed his hand on his gun so as to threaten her. *Id.* ¶¶ 64–66. After being told by another unknown officer that Hendry had to release the phone to her, Muniz spoke to Hendry, who said he needed a phone bill or another document to identify the phone. *Id.* ¶¶ 67, 68. When Muniz returned with the documentation, Hendry told her the phone was at the Evidence and Recovered Property Section ("ERPS") and could not be returned because it was evidence. *Id.* ¶¶ 69, 70.

Sometime in 2023, Hernandez and Henry told Muniz she could retrieve the phone, but when she went to the station as directed, she was told she could not have it because it was either in a different location or she needed certain paperwork. *Id.* ¶ 73, 74. In March 2024, Sergeant Guzman—who was heading an internal

investigation related to this matter—told Muniz how she could retrieve the phone from ERPS. *Id.* ¶¶ 75, 76. After visiting ERPS as directed, learning she did not have the proper form, obtaining the form, and returning with it in April 2024, Muniz was told by an unknown officer that "the phone is not here and never was." *Id.* ¶¶ 76–80, 85–88. As of the filing of this action, the phone had not been returned to Muniz.

At a status conference in mid-August 2025, the Court asked the City's counsel about the status of the phone. Following that conference, the City represented that it intended to release the phone. Several weeks later, Muniz retrieved a phone purporting to belong to her son, which she soon discovered was not his. When Muniz's counsel's raised this error, the City's counsel submitted a chain of custody report, which reported—incorrectly—that Carroll's phone had been returned to Muniz on October 13, 2021. Several weeks after Muniz's counsel pointed out that the report was plainly inaccurate, on September 24, 2025, the City reported that Carroll's phone was finally returned to Muniz on September 19, 2025. R. 81. The explanation for the misstatement in the chain of custody report remains unclear.

### III.    State Court Suit

On September 20, 2022, Muniz filed a suit in state court against the County Defendants, the City Defendants, and a nonparty for negligence and reckless infliction of emotional distress. *See Muniz v. City of Chicago et al.*, Case No. 2022L008461 (Cook County Cir. Ct.). On January 31, 2024, the state court dismissed all claims against the City Defendants with prejudice and set a hearing to address

4

the status of service on the County Defendants. R. 19-5. The next month, Muniz dismissed her action against the County Defendants without prejudice. R. 19-6.

IV.    Federal Suit

Muniz filed this suit on July 15, 2024. R. 1. The Court granted the City Defendants' motion to dismiss without prejudice and with leave to amend and continued the County Defendants' motion to dismiss. R. 60. In her amended complaint, Muniz asserts a § 1983 claim against Hendry, Hernandez, and unknown officers ("Officer Defendants") for refusing to return Carroll's phone in violation of the Fourteenth Amendment; a § 1983 claim against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); a negligent and/or reckless infliction of emotional distress claim against the ME's Office and Dr. Watkins; and *respondeat superior* against the County. R. 66. The City Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the County Defendants move to dismiss under Rules 12(b)(1), (5), and (6). R. 67, 68.

**Discussion**

I.    City Defendants' Motion to Dismiss

a.  Legal Standard

A Rule 12(b)(6) motion challenges "the legal sufficiency of a complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (citation omitted). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-

5

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

### b. § 1983 Claim Against the Officer Defendants

The City Defendants seek dismissal of the § 1983 claim against the Officer Defendants on several grounds. First, they argue that Muniz fails to adequately plead a Fourteenth Amendment violation. The disposition of seized property is regulated by the Due Process Clause. *Kelley-Lomax v. City of Chicago, Ill.*, 49 F.4th 1124, 1125 (7th Cir. 2022) (citing *Conyers v. Chicago*, 10 F.4th 704, 709–10 (7th Cir. 2021)). But "[s]ubstantive due process is not a blanket protection against unjustifiable interferences with property." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) (citation omitted). Where a "substantive-due-process claim does not implicate a fundamental right and involves only the deprivation of a property interest," a plaintiff

"must show as an initial matter either that state-law remedies are inadequate or that an independent constitutional right has been violated." *Id.* (citation omitted).

Muniz insists that her claim does not merely involve the deprivation of a property interest because it implicates her fundamental rights to free speech and peaceful assembly. That is not a reasonable inference from her complaint. Instead, by her own terms, her claim against the Officer Defendants is "simply" about the deprivation of her property interest in her son's phone. *E.g.*, R. 66 at ¶ 100 ("Simply, Plaintiff is being deprived of property (the phone) without due process of law and without any justification as to why it is being withheld."); *see also id.* ¶¶ 93, 95, 102, 105. The allegation that Hernandez "refused to give her the phone, belittled her, and placed his hand on his gun in an effort to threaten her," although disturbing, does not transform the essential nature of Muniz's due process claim.

Thus, to state a claim, Muniz must plausibly allege that state law remedies are inadequate. To constitute an adequate remedy, the remedy provided by state law need not be the same as that available under § 1983, *Hudson v. Palmer*, 468 U.S. 517, 535 (1984), but it cannot be "meaningless or non-existent," *Easter House v. Felder,* 910 F.2d 1387, 1396, 1406 (7th Cir. 1990). Here, Muniz may theoretically avail herself of several causes of action under state law in connection with the failure to return her son's phone. *See Tucker v. Williams*, 682 F.3d 654, 661 (7th Cir. 2012) (affirming dismissal of Fourteenth Amendment claim against police officer for seizing property without due process because Illinois law provided adequate post-deprivation remedy in the form of a suit for conversion or replevin); *Davenport v. Giliberto*, 566

F. App'x 525, 529 (7th Cir. 2014) (holding that "Illinois law provides an adequate post-deprivation remedy—conversion" for claim that police seized property without due process); *Kahlily v. Francis*, No. 08 C 1515, 2008 WL 5244596, at *1 (N.D. Ill. Dec. 16, 2008) (dismissing Fourteenth Amendment claim against police officer based on loss of property because conversion claim was an adequate state law remedy).

Notwithstanding these potential causes of action, Muniz contends that state law remedies are inadequate based on Section 4-102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, which states in relevant part:

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.

745 ILCS 10/4-102. "Section 4-102 does not contain any exceptions and absolutely immunizes local public entities and their employees for both negligent and willful and wanton conduct in failing to protect or in providing inadequate police protection services." *Andrade v. City of Kankakee*, 2023 IL App (3d) 230035, ¶ 16, 238 N.E.3d 381, 387, *appeal denied,* 232 N.E.3d 18 (Ill. 2024).

Section 4-102 would reasonably bar a claim about deficiencies in the investigation of Muniz's son's death. Indeed, that is, in part, why the state court dismissed her prior case. *See* R. 19-5. But that is not the claim she brings here. Instead, Muniz alleges that the Officer Defendants unlawfully deprived her of Carroll's phone. Muniz does not explain how Section 4-102 would apply to a state law

claim to redress this particular wrong: the deprivation of the phone. Nor is it plausible that Section 4-102 would apply and render the remedies available under state law meaningless or nonexistent. *Compare Easter House*, 910 F.2d at 1406 (rejecting arguments that state law remedies were inadequate in light of potential application of immunity and "lengthy and speculative process" of recovery under state law), *with Belcher v. Norton*, 497 F.3d 742, 751–53 (7th Cir. 2007) (Indiana tort law did not provide adequate remedy because its immunity provision covered the conduct at issue). Thus, Muniz fails to state a Fourteenth Amendment claim.

Even if the Court were to find otherwise, the claim would warrant dismissal on qualified immunity grounds. The qualified immunity defense protects government officials from both liability and suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Officer Defendants are entitled to dismissal under the doctrine of qualified immunity unless Muniz alleges facts that, if true, would constitute a violation of a statutory or constitutional right, and shows that the right was "clearly established" at the time of the alleged violation. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020). A right is "clearly established" when the law is "sufficiently clear" such that "every reasonable official would understand that what he is doing is unlawful." *Sabo v. Erickson*, 128 F.4th 836, 844 (7th Cir. 2025) (cleaned up). That is, "existing precedent must place the constitutional or statutory question beyond debate." *Id.* (citation and internal quotation marks omitted).

Muniz fails to show that the right the Officer Defendants allegedly violated is clearly established. She has not identified any case setting forth a due process right

to the return of a deceased family member's property by police, nor has this Court. *See Copeland v. Johnson*, No. 18-CV-3780, 2020 WL 7027598, at \*5 (N.D. Ill. Nov. 30, 2020) (dismissing § 1983 claim arising from battery by a fellow firefighter on qualified immunity grounds where none of the cases identified by plaintiff or the court set forth a public employee's right to be free from excessive force or any unreasonable seizure). The single case she cites bears no similarity to the factual circumstances at hand. *See White v. Pauly*, 580 U.S. 73, 79–80 (2017) (qualified immunity applied to § 1983 claim that officer violated the Fourth Amendment when he shot an armed occupant of a house without giving a warning). Further, even drawing all reasonable inferences in Muniz's favor, the Court cannot conclude that the alleged conduct of the Officer Defendants throughout Muniz's effort to obtain the phone was so egregious that every reasonable officer would have understood it to violate due process.

As to Hernandez, Muniz contends that she sufficiently pleads a violation of a clearly established right under the First Amendment to be free from threats when asking about the return of her son's property and the investigation into her case. Whether Muniz intends to pursue a First Amendment claim for Hernandez allegedly belittling and threatening her that is separate from her due process claim for the refusal to return the phone is unclear. Regardless, here too she points only to *White*, which provides no support for the proposition that there is a clearly established First Amendment right to request a deceased family member's property free from threat or intimidation. Nor can the Court conclude that every reasonable officer would know that the alleged conduct amounts to a violation of the requestor's First Amendment

10

rights. Accordingly, and without reaching the parties' arguments regarding the named officers' personal involvement, the § 1983 claim against the Officer Defendants is dismissed.

c. <em>Monell</em> Claim Against the City

The City Defendants also seek dismissal of the *Monell* claim. A government entity can be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. To state a *Monell* claim, Muniz must plead facts that plausibly suggest that (1) she was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom); (3) the policy or custom demonstrates municipal fault (i.e., deliberate indifference); and (4) the municipal action was the moving force behind the violation. *Thomas*, 74 F.4th at 524. Three types of municipal action support *Monell* liability: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (citation omitted).

As previously discussed, Muniz does not sufficiently plead a constitutional violation, so she fails to state a *Monell* claim on that basis. But even if the Court were to find otherwise, her allegation of municipal action amounts to mere boilerplate. She asserts that her son's phone was unlawfully retained by Chicago Police pursuant to

11

both an express policy and a widespread practice. R. 66 ¶ 116. But she does not identify any particular policy, nor can the Court reasonably infer from the facts alleged that the officers refused or failed to return the phone because they were acting pursuant to any policy. Further, her factual allegations are limited to her own experience trying to obtain her deceased son's phone. Those allegations, though implicating multiple officers, do not plausibly suggest a pattern or custom of withholding property on the part of Chicago Police. *See Hutton v. City of Chicago*, No. 20-CV-03997, 2021 WL 809731, at \*4 (N.D. Ill. Mar. 3, 2021) (allegation that police refused to investigate the off-duty police officer who assaulted plaintiff was insufficient to plausibly allege a policy or custom of failing to investigate the criminal conduct of off-duty police officers). Muniz also offers no response to the argument that she fails to plead deliberate indifference. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("It is a longstanding rule that a plaintiff waives his claims when he . . . fails to respond to alleged deficiencies in a motion to dismiss."). Therefore, the *Monell* claim against the City is dismissed.

### d.  Leave to Amend

Muniz asks the Court for leave to amend her complaint but offers no indication of how she aims to cure the defects identified by the City Defendants and discussed in the preceding sections. Having given Muniz the opportunity to amend following the dismissal of her original complaint, and Muniz having filed a first amended complaint that still fails to state a plausible claim for relief against the City

Defendants, the Court finds that further amendment would be futile and dismisses the claims against the City Defendants with prejudice.

II.     County Defendants' Motion to Dismiss

The County Defendants argue, among other things, that the Court lacks supplemental jurisdiction over the claims against them. A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a)). "Claims form part of the same case or controversy when they derive from a common nucleus of operative fact." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014) (citation and internal quotation marks omitted). To be "operative," the facts must be "relevant to the resolution of" both claims. *Mata v. Deslauriers, Inc.*, No. 21 CV 3976, 2023 WL 6065478, at *2 (N.D. Ill. Sept. 18, 2023) (quoting *United States v. Clark*, No. 08-C-4158, 2010 WL 476637, at * 1 (N.D. Ill. 2010)).

At a high level, this suit arises from the events following the disappearance and death of Muniz's son. But the federal claims against the City Defendants and the state law claims against the County Defendants derive from two independent sets of operative facts. The claims involve different individuals, agencies, and courses of action. The federal claims are premised on Chicago Police allegedly withholding Carroll's phone from Muniz for years following his death. The state law claims are about the ME's Office misidentifying Carroll as an unknown Black male notwithstanding the identifying information in its possession, and the emotional

13

distress the lack of identification allegedly caused Muniz. In other words, the facts supporting the state law claims are unnecessary to the resolution of the federal claims. *Cf. Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (court had supplemental jurisdiction over state tort claim against co-worker for assault and battery because the relevant facts were a subset of facts supporting the Title VII claim against the employer); *see also Prolite Building Supply, LLC, v. MW Manufacturers, Inc.*, 891 F.3d 256, 258–59 (7th Cir. 2018) (district court did not have supplemental jurisdiction where the state law claims involved some of the same parties but different grievances); *Saud v. DePaul Univ.*, No. 19-cv-3945, 2019 WL 5577239, at *8 (N.D. Ill. Oct. 29, 2019) (denying supplemental jurisdiction where "none of the facts necessary to resolution of the state law claims are more than tangentially related to [the] sole remaining federal claim").

Muniz states that she suspects and intends to prove that Carroll's phone was withheld to cover up the actions of *both* Chicago Police and the ME's Office. But this bald assertion is found nowhere in her complaint, nor is it a reasonable inference from the factual allegations therein. Muniz does not allege that the ME's Office was, in any way, involved in the recovery, possession, or failure to return the phone to her. Instead, as alleged, Chicago Police was in possession of Carroll's phone from its recovery at the crime scene through its return in September 2025. R. 66 ¶¶ 63, 81, 82. Muniz also does not explain how Chicago Police's motive for withholding the phone is relevant to her state law claims against the County Defendants for the emotional distress allegedly caused by the misidentification of her son's body.

14

Because the federal and state law claims do not derive from a common nucleus of operative fact, the Court lacks supplemental jurisdiction over the claims against the County Defendants. In light of this finding, the Court does not reach the County Defendants' other arguments for dismissal.

Muniz asks for the opportunity to amend her complaint to show the requisite overlap in operative facts. She does not articulate what that overlap would be beyond the accusation that Chicago Police withheld the phone to cover up misconduct by all parties, which, as discussed above, does not support supplemental jurisdiction. And while the Court did not rule on the County Defendants' motion to dismiss Muniz's original complaint, that motion raised a lack of supplemental jurisdiction as a basis for dismissal, and Muniz thereafter filed a first amended complaint that fails to bridge the gap. Therefore, the Court denies Muniz's request to amend and dismisses the claims against the County Defendants without prejudice.

## Conclusion

For the foregoing reasons, the motions to dismiss are granted. The claims against the City Defendants are dismissed with prejudice and the claims against the County Defendants are dismissed without prejudice.

Muniz has suffered a terrible ordeal, from the troubling misidentification of her son's body in the weeks following his death to the inexplicable and inexcusable failure to return his phone to her until this Court's inquiry four years later. But because she does not state a federal claim and the Court does not have jurisdiction over the state law claims, the Court must dismiss her complaint.

15

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: November 7, 2025

16