```
 1                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3
     CHRISTINE MUNIZ,                    )  Case No. 24 C 5948
 4                                       )
                      Plaintiff,         )
 5                                       )
         v.                              )
 6                                       )
     CITY OF CHICAGO, CHICAGO            )
 7   POLICE DETECTIVE CHARLES            )
     HERNANDEZ, CHICAGO POLICE           )
 8   DETECTIVE JOHN HENDRY,              )
     UNKNOWN OFFICERS, COOK COUNTY       )
 9   MEDICAL EXAMINER'S OFFICE           )
     LATANJA M. WATKINS,                 )  Chicago, Illinois
10                                       )  October 15, 2025
                      Defendants.        )  10:00 a.m.
11
         TRANSCRIPT OF PROCEEDINGS - IN-COURT STATUS HEARING
12            BEFORE THE HONORABLE THOMAS M. DURKIN

13   APPEARANCES:

14   For the Plaintiff:    FRANKFORT LAW GROUP
                           BY:  MR. CHRISTOPHER M. JAHNKE
15                         10075 W. Lincoln Highway, Floor 1
                           Frankfort, Illinois 60423
16

17
     For Defendant         CITY OF CHICAGO, DEPARTMENT OF LAW
18   City of Chicago:      BY:  MS. SIMERDEEP KAUR
                           2 N. LaSalle Street, Suite 420
19                         Chicago, Illinois 60602

20

21   For Defendants        CITY OF CHICAGO, DEPARTMENT OF LAW
     Hernandez and Hendry: BY:  MR. DAVID R. CONDRON
22                         2 N. LaSalle Street, Suite 420
                           Chicago, Illinois 60602
23

24

25
```

```
 1    APPEARANCES (Cont'd):

 2
      For the Cook County    COOK COUNTY STATE'S ATTORNEY'S OFFICE
 3    Defendants:            BY:  MR. EDWARD M. BRENER
                             50 W. Washington Street, 5th Floor
 4                           Chicago, Illinois 60602

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19
      Court Reporter:        ELIA E. CARRIÓN, RPR, CRR, CRC
20                           Official Court Reporter
                             United States District Court
21                           219 S. Dearborn Street, Room 1432
                             Chicago, Illinois 60604
22                           312.408.7782
                             Elia_Carrion@ilnd.uscourts.gov
23
                              *   *   *   *   *
24
                   PROCEEDINGS REPORTED BY STENOTYPE
25        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1       (Proceedings heard in open court:)
2            THE CLERK:  All right.  This is Case No. 24 CV 5948,
3  Muniz v. City of Chicago.
4            May I please ask the attorney present on behalf of the
5  plaintiff to state their name.
6            MR. JAHNKE:  Christopher Jahnke, on behalf of --
7            THE COURT:  Go to the mic.  Okay.
8            MR. JAHNKE:  Christopher Jahnke, on behalf of
9  plaintiff.
10           THE COURT:  Okay.
11           THE CLERK:  And on behalf of the City of Chicago.
12           MS. KAUR:  Simerdeep Kaur, on behalf of the City of
13 Chicago.
14           THE CLERK:  And on behalf of Cook County.
15           MR. BRENER:  Edward Brener, B-R-E-N-E-R.
16           THE CLERK:  And on behalf of Defendant Hendry.
17           MR. CONDRON:  David Condron, C-O-N-D-R-O-N, on behalf
18 of the defendant officers.
19           THE COURT:  All right.  Thank you for all coming in
20 today.  It's unusual.  We usually do things over the phone, but
21 I thought this necessitated an in-court hearing.
22           I will say up front, I'm confused.  I had a previous
23 status where I expressed some displeasure about the idea that
24 the phone at issue in this case was -- seemed to be
25 a negotiating point for settlement.  I said I thought that was

1 unnecessary, expressed some displeasure about it. To their
2 credit, the City said, we'll give the phone back.
3     I think I asked you to talk to -- I'm not sure,
4 Ms. Kaur, if it was you or -- it might have been you -- where I
5 said, talk to the supervisor, but this doesn't sound right.
6     And I think to your credit and the City's credit, they
7 agreed to give the phone back. But then it just got confusing
8 to me. I -- as I read this, it's -- it was a status call on
9 the 14th where I asked why the City couldn't return David
10 Carroll's phone to his mother, Ms. Muniz. Five days later, on
11 August 19th, Corporation Counsel reported they intended to
12 return the phone.
13     On September 2nd, the Corporation Counsel reported via
14 email they had provided plaintiff's counsel with the
15 documentation for Ms. Muniz to go retrieve the phone.
16     The next day, plaintiff's counsel stated that Muniz
17 went to retrieve the phone, but the passcode did not work. I
18 ordered the Corporation Counsel to provide the correct
19 passcode.
20     On September 10th, plaintiff's counsel reported that
21 CPD had given Ms. Muniz the wrong phone and likely gave her a
22 phone belonging to the individual who was found diseased with
23 Mr. Carroll.
24     In response, the Corporation Counsel attached a chain
25 of custody report purporting to show the return of the --

1   Mr. Carroll's phone, a black Samsung phone, to Ms. Muniz on
2   October 13, 2021.  Turned over by an Albert Perez.  The chain
3   of custody report was provided to the Court.  Plaintiff's
4   counsel said that report was untrue.
5           When we tried to schedule a call to discuss it, we had
6   some difficulty scheduling a call.  And on September 24th, the
7   parties filed a written report stating that Carroll's phone was
8   turned over to Muniz on September 19th.  This shows the chain
9   of custody report was false.  The chain of custody report says
10  it was turned over to her on October 13, 2021.
11          And here we are.  There's two motions to dismiss
12  pending.  I'll rule on them if you can't settle this case, but
13  I -- this phone has turned into something bigger than the case
14  itself at some point.
15          And you've got it back now, correct?
16          MR. JAHNKE:  Yes, Your Honor.  And just so the record
17  is clear, Ms. Muniz is in court as well.
18          THE COURT:  All right.
19          Good morning, Ms. Muniz.  Thank you for coming in.
20          You've got it back now?
21          MR. JAHNKE:  Yes.  It -- it was re- -- retrieved after
22  I spoke with the City's counsel about the fact that the chain
23  of custody was incorrect.  And then she got to the bottom of
24  it, and we get -- we did get the phone back.
25          THE COURT:  All right.  Ms. Kaur, what's going on?

1  MS. KAUR: First, Your Honor, I understand that this
2  is confusing. So we provided this chain of custody -- so on --
3  on the day that we initially returned the phone, counsel
4  reached out and said that was the incorrect phone. There were
5  two phones that were recovered during this investigation.
6  It's -- based on the chain of custody, someone from
7  the CPD attempted to return the phone back in October, three
8  months after this incident. However, they did it incorrectly.
9  So when they were filling out the form, it's -- on the
10  computer, they clicked the button that said it was turned over.
11  And so since October 2021, it's been showing in ERPS
12  database that the phone had been turned over, because the
13  person initially doing it, Mr. Perez, clicked it all the way
14  through instead of waiting for Ms. Muniz to come and retrieve
15  the phone.
16  And so that's why when I have asked about the -- that
17  phone, it's -- when I have inquired about the phone since this
18  litigation began, it was just that one phone that we initially
19  turned over, the incorrect phone.
20  When counsel reached out about the chain of custody, I
21  asked the lieutenant at ERPS. They have additional rows on
22  their chain of custody that shows the location of the property,
23  which we don't have. He went and looked at the location and
24  saw that the property was still there. And so it had not been
25  turned over in October of 2021.

1 　　　　　And in an attempt to comply with this Court's
2 direction, we attempted to turn over the phone before any
3 discovery began, before we could really figure out what
4 happened.  And so we did turn over the wrong phone initially.
5 And then when counsel reached out, we discovered that that
6 phone was still there.
7 　　　　　THE COURT:  Have you interviewed Mr. Perez?
8 　　　　　MS. KAUR:  No.
9 　　　　　THE COURT:  All right.  How do you know he filled this
10 out the way you just described?
11 　　　　　MS. KAUR:  It was told to us by the lieutenant at
12 ERPS, Lieutenant Fitzgerald.
13 　　　　　THE COURT:  Okay.
14 　　　　　MR. JAHNKE:  So, Judge, if I may comment a little bit?
15 　　　　　THE COURT:  Yeah, go ahead.
16 　　　　　MR. JAHNKE:  I'm going to say this bluntly.  I don't
17 believe that story.  And the reason I don't believe it is I've
18 been trying to get this phone back for close to four years.
19 And when we had an Internal Affairs investigation, that
20 Internal Affairs officer, his name is Guzman, he told me he
21 knew for sure her son's phone was there.
22 　　　　　And I've brought this up to the City's counsel
23 countless times, both counsel here and other cocounsel, and
24 no one's ever mentioned this chain of custody before.  So why
25 was this the first time I saw a chain of custody in four years?

1  That doesn't make any sense. So I -- I'm baffled at what has
2  transpired in this case, honestly.
3              And I know that counsel can only rely on the
4  information that she's told, but I don't believe them. Not
5  counsel. I don't believe the people that are giving her the
6  information.
7              THE COURT: Well, I thought the phone was held at one
8  point because of an open death investigation.
9              MR. JAHNKE: That's what I was told at one point,
10 Your Honor. I've been told many different things. I've been
11 told that. I've been told that we didn't have the right form.
12 I've been told that, oh, it's not at ERPS; it's somewhere else.
13 I've been told tons of different things.
14             I mean, this isn't the -- I don't know why this was
15 such a difficult thing for them to accomplish, especially
16 because they closed the investigation into his death too
17 quickly, in my opinion, but pretty quickly.
18             THE COURT: What was -- when was it closed?
19             MR. JAHNKE: It was like a few months after his death.
20             THE COURT: And what was the date of his death?
21             MR. JAHNKE: It was -- the date of death I think
22 officially was something like August 2nd of '21. But my client
23 did not discover that he was at the Cook County Medical
24 Examiner's Office until September 23rd, I think, of '21.
25             And then like she indicated, this entry was made in

1  October of '21, allegedly.  So it was definitely closed by then
2  because he wouldn't have made this entry if they're being
3  truthful if that was the case, right?  I mean, they --
4              THE COURT:  Well, that's -- that's the disconnect here
5  because it -- it would seem -- this -- this chain of custody
6  report would make sense with a fairly quick closure of the
7  death investigation.  Whether it was improper -- you know,
8  whether that was premature or not, a few months after the --
9  the passing, this says they returned the phone.  That was
10 demonstrably false.  The phone went back -- came back years and
11 years later.
12             All right.  Well, is Mr. Perez still employed by the
13 City?
14             MS. KAUR:  I have not inquired, Your Honor.  My
15 initial -- due to the -- this Court's order and guidance, it
16 was to get the correct phone back to him, which, again, we are
17 doing this all before we're in discovery.
18             And I assume had we gotten into discovery, we would
19 have figured out that, one, which phone Ms. Muniz was actually
20 attempting to get, because all these years we've been assuming
21 it's the phone that shows up that's in custody, which is the
22 incorrect phone that we turned over; and, two, that we probably
23 would've figured out that it was still there.
24             THE COURT:  All right.  Well, what do you want to do,
25 from plaintiff's side?

1      And I'll hear from defense in a minute.

2      MR. JAHNKE: So -- so at this point in time,
3 Your Honor, my understanding is that neither party is willing
4 to discuss any terms of settlement. So I -- we have to move
5 forward. We -- we have no choice. That's my understanding.

6      THE COURT: Are you willing to engage in a --
7 Judge McShain spent some time --

8      MR. JAHNKE: Sure.

9      THE COURT: -- with all of you, and I think she's
10 perfectly happy to go back and pick up where you left off.

11      At that time, the retrieval of the phone, the failure
12 to turn it over, was one of the points, as I understand it.
13 She wouldn't give me, nor is she allowed to give me, the
14 details of a settlement conference, but I knew the phone was a
15 sticking point. Maybe not the primary one, but it was
16 something that was hindering any further discussions. That's
17 no longer the case. Late though it may have been, the phone is
18 back.

19      With the phone back, are you willing to engage -- are
20 you and your client willing to go back to Judge McShain and
21 give it one more time, because there's pending motions to
22 dismiss that could be dispositive. I don't know what I'm going
23 to do with them.

24      MR. JAHNKE: I -- I understand that, Judge, but my
25 understanding -- I guess what I'm saying is, the City and the

1 County are not willing to put a single dollar on this case, and
2 that's just not good enough from our perspective.
3     I mean, every time we've tried to get his phone -- and
4 I'm going to tell you, when they gave us the wrong phone and
5 then they produced this chain of custody document that showed
6 that she allegedly received the phone four years ago, I don't
7 know if you -- you're familiar with how PTSD or trauma works,
8 but my client was a wreck. I mean, for a --
9     THE COURT: No. And Ms. --
10     MR. JAHNKE: -- couple weeks, like -- and I'm --
11 I'm sorry, I know she's here, but I don't think she will have
12 any objection to me saying this.
13     Both myself and my paralegal, who's present, we spoke
14 to her many times, you know. Hey, listen, we'll get this
15 sorted out. But she was really -- I mean, it was -- it brought
16 everything back again and again.
17     And every trip to ERPS where they're, oh, you've got
18 the wrong form, or it's not here, or whatever they would tell
19 her. And I went with her twice. So I know it wasn't -- she
20 wasn't doing anything wrong. I went with her twice and they
21 refused.
22     So, listen, whether you end up dismissing the case on
23 motion -- I mean, you are the judge and you have the
24 responsibility to follow the law and I get that and you're
25 going to do what you gotta do. But from my perspective, Judge,

1 we just simply cannot settle this case without some
2 compensation, because this has been egregious.
3     THE COURT: All right. Let's hear from the City.
4     MS. KAUR: Your Honor, I have not been authorized to
5 put any money on the table. Based on this hearing today, I can
6 go back and -- and ask, but I have exhausted the full authority
7 of -- of what I'm allowed to settle this case for.
8     THE COURT: Well, by "exhausted," you mean zero has
9 gone up to zero?
10     MS. KAUR: No, Your Honor. It was --
11     THE COURT: You don't have to give me numbers. Did
12 you put money on the table?
13     MS. KAUR: No. I have not been authorized to put
14 money on the table.
15     THE COURT: Well, then it's zero. Okay.
16     MS. KAUR: Yeah.
17     THE COURT: Let's hear from counsel for the County.
18     MR. BRENER: Your Honor --
19     THE COURT: In front of the mic, please.
20     MR. BRENER: I'm sorry, Your Honor. Sorry.
21     Again, Edward Brener.
22     Can you hear me?
23     THE COURT: Yes.
24     MR. BRENER: Okay.
25     Counsel's correct, we put no money on this case. We

1   will not put money on this case.  We did not request the
2   initial referral to Judge McShain, but we did engage in that
3   process in good faith.  We did make a nonmonetary settlement
4   offer.  That offer was not accepted.  It is a final offer.  And
5   our position as to settlement has not and I do not anticipate
6   will change.  So --
7            THE COURT:  All right.
8            MR. BRENER:  -- we -- we do not seek any referral to
9   Judge McShain.
10           THE COURT:  And how about for Defendant Hendry?
11           MR. CONDRON:  On behalf of the defendants --
12           THE COURT:  Pull the mic in front of you or --
13           MR. CONDRON:  Oh, sorry.  Apologize, Judge.
14           THE COURT:  Sure.
15           MR. CONDRON:  You know, I -- I -- I have to say, I
16  think we've been kind of following the City's lead on this
17  matter in terms of -- in terms of where we're at in the
18  settlement.  I think we've been kind of aligned, and we're --
19  we kind of answer to the same individuals at our office.
20           We -- we don't currently have any authority.  But
21  given the change in circumstances, we would certainly be
22  willing to, you know, speak to the powers that be and -- and
23  see if another shot -- another follow-up settlement conference
24  with Judge McShain would be fruitful.
25           I -- I -- I -- again, I -- we've -- we've -- this is

1   unfortunate -- the whole thing is unfortunate.  We acknowledged
2   that.
3           THE COURT:  Yeah.  Well, I'm -- I'm -- I'm not going
4   to send you to Judge McShain if the -- nothing has changed
5   since the last time you had an unsuccessful settlement
6   conference in front of her, other than the return of the phone.
7           But I would think, just given the reality of where
8   things are at, a -- go back to your supervisors and see if you
9   can get any authority.  Whatever it may be, both of you -- you
10  know, the -- the authority from both -- the County doesn't look
11  like they're moving, but any authority you have, and go back to
12  Judge McShain.
13          I'll give you two weeks to report back to me on
14  whether that's going to happen.  If it doesn't, I'm going to
15  rule on the motions to dismiss.  If they're denied, we'll set a
16  discovery schedule and depositions will begin.  If it's
17  granted, then, you know, the case will be over.
18          And you can take an appeal if you think we decided it
19  incorrectly.  But that's what I have to do.
20          But two weeks ought to be plenty of time, given the
21  time spent already with supervisors on this case, presumably
22  over this issue, which is, you know, not right.  There's no way
23  of looking at it in any other way.
24          Ms. Muniz, you've been treated badly.  It's not your
25  fault.  You've been given the runaround by the police; you've

1  been given the runaround by Corporation Counsel, who represents
2  police, maybe not this individual.  I'm not casting aspersions
3  on her.  But you've been getting the runaround.  It's not
4  right.  It shouldn't have happened.
5      I can't apologize because I'm not the one involved,
6  but I can look at this and tell you it's not right.  And I
7  don't in the least bit blame you for having -- you know, for
8  these -- given the tragic loss of your son, for having these
9  events, you know, re-raise some very painful episodes in your
10 life.  So for that, I'm very sorry.  It shouldn't have
11 happened.
12     And I think, you know, the City would be well to
13 acknowledge that, even if it's not something that, you know, is
14 a legal admission that prejudices you on your motion.  An
15 acknowledgment from the City that the plaintiff was treated
16 poorly in the very simple, absolutely simple request, once a
17 death investigation is over to get back the property of her
18 son, as a matter of humanity.
19     Take that back to your supervisors and see what they
20 say.
21     In two weeks -- Emily, two weeks is when?
22     THE CLERK:  That would bring us to October 29th.
23     THE COURT:  All right.  Let us know by email whether
24 or not you agree to go back to Judge McShain for a settlement
25 conference or if that would be a waste of time.  If we -- and

1 you don't have to put it that way.  If you don't want to go
2 back, you don't have to say it's a waste of time.  If we get
3 that email saying you're not going back, we'll rule on the
4 pending motions, and the case will proceed if I deny the
5 motions.  And if there is a request to go before Judge McShain,
6 I'll hold off on filing -- on ruling on any motions until
7 you've had that conference with her.
8       Any questions by plaintiff?
9       MR. JAHNKE:  No -- no, thank you.
10       THE COURT:  By the City?
11       MS. KAUR:  No.
12       THE COURT:  County?
13       MR. BRENER:  No, Your Honor.
14       THE COURT:  And by the officer?
15       MR. CONDRON:  No, Your Honor.
16       THE COURT:  All right.  Thank you all for coming in.
17       Thank you, Ms. Muniz, for coming in.
18       MR. JAHNKE:  Thank you.
19       MR. CONDRON:  Thank you, Judge.
20       MR. BRENER:  Thank you.
21    (Concluded at 10:18 a.m.)

       \*   \*   \*   \*   \*

22     I certify that the foregoing is a correct transcript of
the record of proceedings in the above-entitled matter.
23
*/s/ Elia E. Carrión*                   *9th of November, 2025*
24 _____    _____
Elia E. Carrión, RPR, CRR, CRC
25 Official Court Reporter